UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:19-CV-00166-JHM

JACOB CLARK, et al.                                                    PLAINTIFFS

V.

BERNADETTE STONE, et al.                                            DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' official capacity claims.  [DN 10].  Fully briefed, this matter is ripe for decision.  For the following reasons, the Defendants' motion is **GRANTED**.

I.      BACKGROUND

Plaintiffs Jacob and Genetta Clark, for themselves and as Next Friend and Guardian of H.C., a minor (collectively, the "Plaintiffs"), brought suit against Bernadette Stone, Catherine Campbell, and Douglas Hazelwood in both their official and individual capacities.  [DN 1]. Additionally, Plaintiffs sued Marcus Haycraft and Adam Meier, now succeeded by Eric Friedlander[1], in their official capacities.  Plaintiffs allege they were deprived of their First, Fourth, Fifth, and Fourteenth Amendment rights by the Defendants.  [DN 1 ¶ 2].  Plaintiffs also allege that a Kentucky regulation interferes with their constitutional right to direct the upbringing of their children.  [*Id.*].

Jacob and Genetta Clark have three children together—C.C., age 16; N.C., age 14; and H.C., age 12.  [*Id.* ¶ 3].  According to the Complaint, in December 2018, Mr. and Mrs. Clark

---

[1] Plaintiffs' Complaint named Adam Meier as a defendant.  At the time of filing, Meier was the Cabinet Secretary of the Kentucky Cabinet for Health and Family Services.  When Defendants moved to dismiss, they substituted Eric Friedlander as the named defendant.  [DN 10 at 1 n.1].  On December 10, 2019, under appointment by the newly-elected Kentucky Governor Andy Beshear, Friedlander became the acting Cabinet Secretary.  Plaintiffs agree that Friedlander is now the correct defendant.  [DN 11 at 2 n.2].

were experiencing disciplinary issues with their son, N.C., that extended to his behavior at school. [*Id.* ¶ 18].  His parents warned that if his conduct did not change, there would be consequences. [*Id.*].  In mid-December, the family was at home and Mrs. Clark was helping N.C. treat his acne. At some point, N.C. became upset, stood up, and slammed the door in his mother's face.  [*Id.* ¶ 22].  When Mrs. Clark opened the door, N.C. began using threatening body language.  [*Id.*].  Mrs. Clark, concerned that N.C. was going to strike her, struck N.C. twice on his rear end with a wooden back scratcher.  [*Id.*].  When N.C.'s behavior did not improve, Mr. Clark struck N.C. five or six times across his rear end with a belt.  [*Id.* ¶ 23].  N.C., trying to intervene, pushed his arm down, and his arm was struck by the belt.  [*Id.*].  N.C.'s older brother, C.C., who also attempted to intervene to stop his parents, was thereafter disciplined with the belt.  [*Id.* ¶ 24].

The Complaint states that the next morning, N.C. apologized to his parents and acknowledged that the disciplinary measures taken were overdue given his outbursts.  [*Id.* ¶ 25]. C.C., though, made a report to his school.  The following day, Stone, a social worker from the Kentucky Cabinet for Health and Family Services ("CHFS"), received information regarding the incident.  [*Id.* ¶ 27].  Stone instructed the school staff to remove the children from their classrooms for interviews.  [*Id.* ¶ 30].  According to the Complaint, the children were asked whether they were safe at home and whether they were being abused.  [*Id.* ¶ 32].  During the interview, Stone noticed a red mark on N.C.'s arm which was photographed.  [*Id.* ¶ 31]. Defendants dispute Plaintiffs' claim that the red mark on N.C.'s arm was the only basis for Stone pursuing an investigation in this case.  [DN 10 at 2 n.4].  Defendants' Motion states that "C.C. also reported that his mother Genetta Clark punched him in his face and hit him in the crotch with a backscratcher."  [*Id.*].

Following the interviews with the Clark children, on December 17, 2018, Stone contacted Mr. Clark.  [DN 1 ¶ 39].  Mr. Clark informed Stone that his religious beliefs instruct him to reasonably discipline the children and that corporal punishment is used only when necessary.  [*Id.*].  Stone directed Mr. Clark to bring his children into CHFS to discuss the issue and to enter a prevention plan.  [*Id.* ¶ 40].  Mr. Clark declined and said he would not do so unless required by court order.  [*Id.* ¶ 41].  That same day, Stone filed three neglect/abuse cases in the District Court of Grayson County, Kentucky.  [*Id.* ¶ 46].  The Plaintiffs claim there was no legal or factual basis for the cases filed by Stone because Kentucky law permits reasonable and ordinary discipline recognized in the community where the child resides.  [*Id.* ¶ 49].  Further, Plaintiffs claim that Stone knowingly made false statements in completing her investigation.  [*Id.* ¶ 50].

The case was first heard on December 19, 2018.  [*Id.* ¶ 53].  Plaintiffs allege they were given notice of the hearing only minutes before it was set to begin and thus were unable to attend.  [*Id.*].  The Plaintiffs claim Stone perjured herself at the hearing, which resulted in a court order that Mr. and Mrs. Clark were not to use physical discipline on the children and were to cooperate with the CHFS.  [*Id.* ¶¶ 56–57].  On January 9, 2019, a judge ordered Mr. and Mrs. Clark to permit home visits according to Stone and her co-workers' wishes.  [*Id.* ¶ 58].  Mr. Clark objected, claiming a Fourth Amendment right for a warrant to be issued before a search.  The judge informed Mr. Clark that he did not have a Fourth Amendment right when CHFS was involved and that if the Clarks did not cooperate, he would remove the children from their home.  [*Id.*].  Plaintiffs maintain that they have Fourth Amendment rights even when CHFS is involved.  [*Id.* ¶ 59].

On January 28, 2019, Stone and Campbell, along with a sergeant from the sheriff's office, came to the Clark's home.  [*Id.* ¶ 60].  Mr. Clark posted the text of the Fourth Amendment to the

home's front door and then videotaped the entire interaction with Stone and Campbell.  [*Id.* ¶¶ 61–62].  Mr. Clark objected to the visitors' entry but eventually allowed them in and said he was doing so under duress and coercion.  [*Id.* ¶ 63].  On January 30, 2019, another hearing was held. Plaintiffs allege that at this hearing Stone explained to the judge that the Clarks were not cooperating because of Mr. Clark's use of the video camera.  Plaintiffs allege this constitutes retaliation for the assertion of their First and Fourth Amendment rights.  [*Id.* ¶ 66].  There was another home visit and another hearing before Plaintiffs' claim the CHFS terminated its investigation of the Clarks.  Plaintiffs allege that on August 1, 2019, the claims against the Clarks were dismissed with prejudice upon finding the claims baseless.  [*Id.* ¶ 73].  During the over seven-month pendency of the CHFS's investigation, the Clarks were ordered to cooperate with the CHFS and to not physically discipline their children.  [*Id.* ¶ 74].  The Clark parents maintain that this order caused substantial interference in their ability to direct the education and upbringing of their children.

Plaintiffs seek prospective declaratory and injunctive relief against the official capacity defendants because Mr. and Mrs. Clark claim they fear engaging in reasonable corporal punishment of their children.  [*Id.* ¶ 79].  Specifically, Plaintiffs claim 922 KAR 1:330 § 2(5)(f) chills the exercise of their fundamental constitutional right to direct the upbringing of their children.  [*Id.*].  The crux of their argument is that the regulation establishes a policy whereby any parental discipline that leaves a "mark," however slight or fleeting, constitutes "evidence of abuse."  [DN 11 at 2].  Plaintiffs contend that this regulation is in contravention of the Fourteenth Amendment as well as KRS § 503.110(1), which Plaintiffs claim establishes a parent's right to discipline their child in Kentucky.  [*Id.*].  Additionally, Plaintiffs seek damages for several claims against the individual capacity defendants.

4

All five defendants move to dismiss the official capacity claims against them—specifically, the claims for declaratory and injunctive relief.  [DN 10].  The Motion does not address the individual capacity claims as those defendants claim they have not been properly served with process.  [*Id.* at 1 n.2].  Defendants move to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6).  As grounds, Defendants maintain that (1) Plaintiffs lack Article III standing because they fail to satisfy the injury in fact requirement; (2) Plaintiffs fail to plead plausible claims for prospective declaratory and equitable relief; and (3) the Court should abstain based on the discretionary abstention doctrine under *Grand Trunk W. R.R. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984).  [*Id.* at 1].

## II.   STANDARD OF REVIEW

Though two standards of review are invoked by Defendants, only one is pertinent here. Defendants first claim that this Court lacks Article III standing to decide this case and thus move to dismiss based on a lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Moir v. Greater Cleveland Reg. Auth.,* 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986)).   "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists."  *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (citing *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)).

## III.   DISCUSSION

Plaintiffs seek prospective relief in the form of a declaratory judgment and an injunction. As noted above, Defendants assert three bases upon which the Court should grant their Motion to Dismiss as to these claims. Because subject matter jurisdiction is a "threshold determination," the Court addresses whether Plaintiffs have Article III standing first. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

Because Plaintiffs are suing state officials in their official capacity, the Eleventh Amendment is relevant to their ability to sue. The Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI. However, there are three exceptions to the general prohibition against suit: (1) where the state has waived immunity; (2) where Congress has abrogated sovereign immunity by statute; or (3) where a plaintiff sues a state official in federal court for prospective injunctive relief to prevent the enforcement of a state statute that allegedly conflicts with federal law. *Lawson v. Shelby Cty.*, 211 F.3d 331, 334–35 (6th Cir. 2000).

This case involves the last exception. Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), prospective non-monetary relief against a state official in his or her official capacity to prevent future constitutional or federal statutory violations is not barred by the Eleventh Amendment. The Supreme Court more recently expounded on this exception to sovereign immunity:

> [B]ecause an unconstitutional legislative enactment is "void," a state official who enforces that law "comes into conflict with the superior authority of [the] Constitution," and therefore is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The

6

State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (quoting *Ex parte Young*, 209 U.S. at 159–60). The doctrine of *Ex parte Young* "is accepted as necessary to 'permit the federal courts to vindicate federal rights.'" *Id.* at 248 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984)).

"In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). Plaintiffs satisfy this portion of the jurisdictional inquiry. While a claim for an injunction can be maintained against a state official in his or her official capacity, a plaintiff must have standing to advance such a claim. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). Defendants argue that Plaintiffs lack standing because they have not shown any actual present harm or a significant possibility of future harm that would warrant the application of injunctive or declaratory relief.

To establish standing, a plaintiff has the burden of proving that he or she has suffered "injury in fact," among other things. *Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 584 (W.D. Ky. 2012). Particularly relevant, in cases dealing with declaratory and injunctive relief, "a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). Plaintiffs argue that they are subject to the continuing effects of the unconstitutionality of the Kentucky regulation that "chills" the exercise of the protected conduct—engaging in corporal punishment. [DN 1 ¶ 79]. Practically, "[f]or purposes of ruling on a motion to dismiss for want of standing," district courts "must accept as true all material

allegations of the complaint, and must construe the complaint in favor of the complaining party."
*Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Importantly, the Supreme Court has noted, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102.  To be sure, past wrongs might be "evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* However, "where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Grendell*, 252 F.3d at 833 (citing *Lyons*, 461 U.S. at 109).  By way of example, in *Lyons*, the plaintiff sought to enjoin the Los Angeles Police Department ("L.A.P.D.") from using a choke-hold during arrests that had caused several deaths.  *Lyons*, 461 U.S. at 97–98.  The Supreme Court, recognizing that the L.A.P.D. had previously used a choke-hold against the plaintiff, held that the future threat of injury was still too speculative to confer standing for injunctive relief.  The Court explained:

> That Lyons may have been illegally choked by the police . . . while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation . . . .

*Id.* at 105.

Given the precedent on this point, Plaintiffs' claim to standing based on past exposure to an alleged wrong does not establish the requisite injury in fact to permit them to seek declaratory and injunctive relief to enjoin the alleged illegal application of 922 KAR 1:330 § 2(5)(f).  In other words, Plaintiffs failed to show that they are subject to "actual present harm or a significant possibility of future harm"—a necessary element to seek declaratory and injunctive relief.  *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).  As with the plaintiff in *Lyons*,

the threat of Plaintiffs' future injury is purely conjectural, resting on a string of actions the occurrence of which is speculative.  As the Defendants point out, to show the requisite threat of future injury, Plaintiffs must present evidence establishing: (1) that Mr. or Mrs. Clark will hit one or more of children leaving a mark or visible sign of injury; (2) that the mark will be reported to the CHFS as possible child abuse; (3) that a CHFS worker will understand the mark to be a sign of physical injury and child abuse; (4) that a CHFS worker will open up an investigation based solely on the reported presence of the mark; and (5) that during the investigation, Mr. and Mrs. Clark's parental rights will be interfered with.  It is worth noting, the string of hypotheticals does not stop at the fourth step because Plaintiffs have no constitutional right not to be investigated by the CHFS.  *See Kottmyer v. Maas*, 436 F.3d 684, 691 (6th Cir. 2006) ("Mere investigation by authorities into child abuse allegations without more . . . does not infringe upon a parent's right to custody or control of a child . . . .").  This chain of events is simply too attenuated to establish injury in fact.  *See Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001) (concluding that a chain of events, four steps long, was "too attenuated" to establish injury in fact).  Accordingly, Plaintiffs do not have standing based on their past experience with the CHFS.

Plaintiffs also argue that the Cabinet's power to open an investigation regarding child abuse exposes them to a chilling effect. [DN 1 ¶ 79].  As evidence of this chilling effect, Plaintiffs aver that the fear of an unconstitutional child abuse investigation and disruption of their parental rights has caused them to refrain from using corporal punishment on their children.  The claim at stake here involves Mr. and Mrs. Clark's choice to chill their own use of corporal punishment based on their perception that they would be disciplined for doing so.  But whether they would be investigated and ordered to desist use of corporal punishment, the Court can only speculate.

And "the mere subjective fear that a plaintiff will be subjected again to an allegedly illegal action is not sufficient to confer standing." *Hange v. City of Mansfield*, 257 F. App'x 887, 891 (6th Cir. 2007); *see also Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1193 (D.C. Cir. 1992) ("[W]hether plaintiffs have standing . . . depends on how likely it is that the government will attempt to use these provisions against them . . . and not on how much the prospect of enforcement worries them."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant.").

To be sure, the Court's extensive review of case law on this point did include cases in which courts found that the injury in fact requirement was satisfied where plaintiffs alleged they were deterred or "chilled" from engaging in certain behavior. The Supreme Court addressed this issue squarely in *Laird v. Tatum*, 408 U.S. 1 (1972). Considering a First Amendment claim, the Court framed the question as "whether the jurisdiction of a federal court may be invoked by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity . . . ." *Id.* at 10. Answering that question in the negative, the Court explained that something "more" was necessary. Specifically, the Court stated that its finding of sufficient injury in cases alleging a deterrent or chilling effect resulted from circumstances in which "the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging." *Id.* at 11.

10

The Plaintiffs do not have the something "more" required to assert standing based on their subjective chill.  The challenged regulation is not proscriptive or compulsory in any manner.  Instead, the regulation provides guidance to child abuse hotline workers as to but one factor that should be considered in determining if a child abuse report meets the criteria to open an investigation.  This is not the type of regulation that satisfies the injury in fact requirement based on an alleged chilling effect.

Even accepting "as true all material allegations of the complaint" and construing "the complaint in favor of the complaining party," *Warth v. Seldin*, 422 U.S. 490, 501 (1975), the Plaintiffs have not demonstrated the realistic and credible threat of enforcement necessary to establish standing.  Because the pleadings failed to show "a sufficient likelihood that [the Plaintiffs] will again be wronged in a similar way," *Lyons*, 461 U.S. at 111, the official capacity Defendants are entitled to dismissal of Plaintiffs' prospective claims for injunctive and declaratory relief.

## IV.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [DN 10] is **GRANTED.**

Joseph H. McKinley Jr., Senior Judge
United States District Court

April 23, 2020

cc: counsel of record

11